## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FRANCES DENNEY on behalf of themselves and<br>all others similarly situated,<br>ARTHUR TERHUNE on behalf of themselves<br>and all others similarly situated,<br>MCKENZIE NEWBY on behalf of themselves<br>and all others similarly situated,<br>VENEER SERVICES, LLC, | ) )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) )<br>) | |
| v. | )<br>) | Case No. 1:19-cv-04757-TWP-DLP |
| AMPHENOL CORP.,<br>BORGWARNER, INC.,<br>BORGWARNER PDS (PERU), INC.<br>   f/k/a FRANKLIN POWER PRODUCTS,<br>INC.,<br>400 FORSYTHE, LLC,<br>HONEYWELL INTERNATIONAL, INC., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |
| BORGWARNER PDS (PERU), INC., | )<br>)<br>) | |
| Cross Claimant, | )<br>) | |
| v. | )<br>) | |
| AMPHENOL CORP., | )<br>)<br>) | |
| Cross Defendant. | )<br>) | |

## ORDER ON DEFENDANT HONEYWELL INTERNATIONAL'S
## MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed by Defendant Honeywell

International, Inc. ("Honeywell") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing No.

159.)   Plaintiffs Frances Denney, Arthur Terhune, and McKenzie Newby (collectively,

"Plaintiffs") initiated this potential class action alleging harm and damages resulting from the processing, release, and failure to remediate toxic and hazardous waste. (Filing No. 143 at 1.) In its Amended Complaint, Plaintiffs allege that Honeywell, as well as the other Defendants, committed the following: private nuisance (Count I); strict liability (Count II); battery (Count III); and negligence and gross negligence (Count IV). *Id.* For the following reasons, the Court **denies** the Motion to Dismiss.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Plaintiffs as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The Court omits factual allegations that do not pertain to Honeywell.

From 1963 to 1983, the Bendix Corporation ("Bendix") owned the land and operated a factory located at 980 Hurricane Road in Franklin, Indiana (the "Former Bendix Site"). (Filing No. 166 at 1.) Bendix manufactured various electrical, automotive, and aviation components. *Id.* The primary manufacturing building was originally constructed by Dage Electric, Inc. in 1961 and later acquired by Bendix in 1963.  *Id.* at 2. During Bendix's ownership, wastewater from the factory was discharged into a municipal sanitary sewer. *Id.*  The waste included "cyanide, 1,4-dioxane, as well as the chlorinated solvents TCE, PCE, and TCA." (Filing No. 143 at 15.) In 1981, a wastewater pre-treatment system was installed in a separate building for the treatment of cyanide and chromium. *Id.* Wastewater lines were installed from the plating room to the pretreatment building, and the effluent from the pretreatment plant was routed to a sanitary sewer manhole just south of the main manufacturing building.  *Id.*  In 1983 Bendix ceased all operations at the Former Bendix Site.  *Id.*

2

In February 1984, a hydrogeologic investigation identified significant hazardous volatile organic compound ("VOC") contamination of the soil and groundwater in the area surrounding the former metal plating facility. (Filing No. 143 at 16.) The on-site sewer was found to have several cracks in it and portions of it were replaced. *Id.* On April 1, 1985, Bendix merged with Allied Corporation ("Allied"). (Filing No. 166 at 2.) Through this merger, Allied agreed to "assume[] all of the liabilities and obligations of Bendix." *Id.* In December 1986, Allied entered into a Subscription Agreement with Amphenol Corporation ("Amphenol"), a subsidiary of Allied, whereby Amphenol allegedly assumed all liabilities and obligations of Bendix. (Filing No. 160 at 4.)

In June 1987, Allied sold Amphenol to LPL Investment Group. *Id.* at 5. As a part of the transaction, Allied agreed to indemnify Amphenol for pre-existing environmental liabilities, including those related to the Former Bendix Site. *Id.* Approximately three months later, Allied merged into Allied-Signal, Inc. *Id.* Under the terms of the merger, Allied-Signal expressly "assume[d] all the liabilities and obligations of . . . Allied." (Filing No. 166 at 3.) Amphenol later sold the Former Bendix Site to Franklin Power Products on June 15, 1989. (Filing No. 143 at 19.)

On November 27, 1990, Amphenol voluntarily entered into a consent order with the Environmental Protection Agency ("EPA") to address investigation, monitoring, and remediation at the Former Bendix Site. (Filing No. 160 at 7.) Under the consent order, Amphenol, along with Franklin Power, was required to submit a remedial investigation and plan for corrective measures. (Filing No. 143 at 19.) The consent order was later amended in 1998. (Filing No. 160 at 7.) Allied-Signal, Inc. was then acquired by Honeywell in 1999. *Id.*

On December 3, 2019, Plaintiffs filed a class action on behalf of those individuals who were injured because of "Defendants' wrongful emission, release, discharge, handling, storage,

transportation, processing, disposal and failure to remediate toxic and hazardous waste." (Filing No. 1 at 1.) In July 2021, Plaintiffs amended their complaint adding Honeywell as a defendant. (Filing No. 143.)  In the Amended Complaint, Plaintiffs allege that Honeywell, like the other named Defendants, created a private nuisance, is strictly liable for exposing potential class members to hazardous materials, committed battery, and was negligent or grossly negligent in its handling of the wastewater. *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support").  The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."

*Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

On September 8, 2021, Honeywell filed a Motion to Dismiss, seeking dismissal all claims that Plaintiffs' have asserted against it. (Filing No. 159). Also before the Court is Plaintiffs' Motion for leave to Supplement Plaintiffs' Response in Opposition to Honeywell's Motion to Dismiss (Filing No. 177), and Honeywell's Motion for Extension of Time to Respond to Plaintiffs' Motion (Filing No. 182). The Court will first address the preliminary motions before discussing the merits of the Motion to Dismiss.

### A.   Preliminary Motions

After briefing had closed on Honeywell's Motion to Dismiss, Plaintiffs requested leave to supplement their Response in Opposition to Honeywell's Motion to Dismiss. Plaintiffs contend that due to delayed discovery, documents were produced after the briefing that support and demonstrate Honeywell's own liability related to the remediation efforts at the Former Bendix Site. Plaintiffs argue that allowing them to supplement their opinion and present these documents will allow them "to argue more fully that Honeywell's motion to dismiss should be converted to a motion for summary judgement . . . ." *Id.* at 3.

In response, Honeywell filed a Notice regarding its intent to respond to Plaintiffs' Motion. (Filing No. 179.) Prior to Honeywell filing a response or the Court ruling on the Motion, however, Plaintiffs went ahead and filed their supplemental response. (Filing No. 181.) The following day

Honeywell filed a Motion for Extension of Time to Respond to Plaintiffs' Motion (Filing No. 182), and filed its response the following week.  (Filing No. 187.)

The Court sees no reason to allow Plaintiffs to supplement their response. A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) is concerned with the factual allegations included in a party's pleading and whether those allegations amount to a plausible claim.  Though Plaintiffs ask this Court to change Honeywell's Motion to Dismiss into one for summary judgment so they can include additional documents, no party should be amending their pleadings through briefing.  *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (holding that it is "axiomatic . . . that a plaintiff may not amend his complaint in his response brief"). If discovery has provided additional information that should be included in Plaintiffs' complaint, they should do so by seeking leave to amend their Complaint. The Court can and will decide Honeywell's Motion to Dismiss based on the pleadings as they currently appear in the record.

The Court has considered Honeywell's Response in Opposition filed at docket No. 187, and thus grants Honeywell's Motion for Extension of Time to Respond to Plaintiffs' Motion (Filing No. 182). Plaintiffs' request for leave to supplement its response in opposition to Honeywell's Motion to Dismiss (Filing No. 177) is **denied**.

**B.**     **Honeywell's Motion to Dismiss**

In its Motion to Dismiss, Honeywell asserts that Plaintiffs have failed to state a claim to relief. Specifically, Honeywell argues the Plaintiffs have failed to allege any specific facts demonstrating Honeywell is a successor corporation, and, even if they had, the documents referenced and incorporated into the Amended Complaint expressly show that Honeywell is not a successor corporation.  (Filing No. 160 at 13-14.)  Honeywell contends that the specific documents

incorporated into Plaintiffs' Amended Complaint show that the liabilities were expressly assumed by Amphenol when it was spun off by Allied and, thus, did not flow to Honeywell. *Id.* At 16.

According to Honeywell, the incorporated 1998 Consent Order "makes clear that Amphenol contractually assumed the liabilities related to the Former Bendix Site with the only excluded liability being those of the current property owner to insure [sic] compliance with deed and use restrictions placed on the site." *Id.* At 17. The 1998 Consent Order states the following:

> Performing Respondent shall refer to Amphenol Corporation, who by contractual arrangement has assumed certain responsibilities for past practices, and who with the cooperation of [Franklin Power Products Inc.], has assumed primary responsibility for performance of the SOW except for those tasks, such as institutional controls, restrictions on real estate rights to the Facility, or access to the Facility which require the action or approval of [Franklin Power Products Inc.].

(Filing No. 160-2 at 9.) Additionally, pursuant to the February 20, 1987, Subscription Agreement, Amphenol clearly assumed the Bendix liabilities. *Id.* The 1987 Subscription Agreement included the following language:

> 2.    Consideration for Assets
>
> For the Assets transferred and assigned hereunder to Subsidiary by Allied, Subsidiary:
>
> . . . .
>
> B.    Assumes and agrees to perform, pay and discharge the liabilities and obligations of Allied and its affiliates, whenever arising, whether known or unknown, foreseeable or unforeseeable, asserted or unasserted, arising out of or in any manner related to the operations or former operations of the Division business or to the Assets, remaining unpaid or unperformed before, on or after the date hereof, including but not limited to (i) all liabilities (including environmental liabilities) arising out of or related in any manner to the operation or use or former operation or use of all manufacturing and other facilities operated or used or formerly operated or used, in whole or in part, in connection with the Division business, as conducted or formerly conducted by Subsidiary, Allied, any of their respective affiliates or any predecessor companies, . . . .

(Filing No. 133-13 at 5.) Honeywell argues that these documents, in conjunction with the 1990 Consent Order demonstrating that Allied sold its stock of Amphenol Corporation to LPL Investment Group, Inc., "confirm that the environmental liabilities related to the Former Bendix Site were, in fact, transferred to Amphenol". (Filing No. 160 at 18-19.)

Honeywell also contends that Plaintiffs' Amended Complaint includes contradictory statements that cannot both be accepted at true. *Id.* At 19. According to Honeywell, Plaintiffs' allegation that Amphenol is liable for actions taken "through its predecessor, Bendix Corp" contradicts Plaintiffs' allegation that Honeywell is the successor to Bendix. *Id.* Honeywell asserts that Plaintiffs have failed to explain how Bendix's liabilities could have been transferred to both Amphenol and Honeywell. *Id.*

Finally, Honeywell argues that Plaintiffs also have no basis for claims based on Allied's past agreement to indemnify Amphenol for pre-existing environmental liabilities. *Id.* At 21. Honeywell asserts that Plaintiffs were not party to that indemnity agreement, and, pursuant to Indiana's "direct action rule," third parties are prohibited from bringing claims against an alleged tortfeasor's insurer or contractual indemnitor. *Id.*

In response, Plaintiffs contend that they have provided sufficient detail for their claims against Honeywell. (Filing No. 166 at 6.) In addition to describing Bendix's actions, Plaintiffs argue that they included a footnote in their Amended Complaint that incorporates documents that describe the corporate transactions that resulted in Honeywell being a "successor" of Bendix. *Id.* Given that the motion to dismiss standard requires that the facts be viewed in a light most favorable to them, Plaintiffs assert that at this stage of the litigation, they have pleaded enough factual information alleging that Honeywell is a corporate successor. *Id.*

Secondly, Plaintiffs also argue that not only have they met the pleading standard, but that the corporate transactions clearly show that Honeywell is a successor. *Id.* At 7. Plaintiffs contend that following a merger, a corporation's liabilities and obligations transfer to the surviving corporation. *Id.* (citing *Peters v. Davidson, Inc.*, 359 N.E.2d 556, 562 (Ind. Ct. App. 1977)). Plaintiffs assert that Bendix's environmental liabilities transferred to Allied when the two companies merged, then to Allied-Signal during that merger, and finally to Honeywell when Allied-Signal obtained Honeywell and kept the name. *Id.* Plaintiffs argue that these corporate transactions show that Honeywell was the final company to assume Bendix's liabilities following the 1985 and 1987 mergers. *Id.*

Contrary to Honeywell's arguments, Plaintiffs contend that the 1986 Subscription Agreement between Allied and Amphenol does not affect Honeywell's status as Bendix's successor. Plaintiffs assert that its "was not a merger transaction that operated to transfer all of Allied's liabilities but was "a transfer of assets in exchange for stock, a limited contractual assignment of certain liabilities, and an indemnification." *Id.* At 7-8. Plaintiffs argue that the merger and 1986 Subscription Agreement did not relieve Allied of Bendix's liabilities or any future liability as Bendix's successor, but merely allowed Allied to seek indemnification from Amphenol if that occurred. *Id.* At 8. Plaintiffs contend that any contractual agreement between Amphenol and Allied does not prevent a third party, like Plaintiffs, from pursuing tort claims against successors of original tortfeasors. *Id.*

Plaintiffs also argue that in addition to its liability as a successor, Honeywell is also liable based on its own negligence. *Id.* Plaintiffs assert that Honeywell's predecessor, Allied, assumed various duties related to Amphenol's remediation of the contaminated sites. *Id.* When Allied sold Amphenol, Plaintiffs contend that Allied "retained rights and assumed duties and control well

beyond that of a typical indemnitor." *Id.* At 9. These "rights" and "duties" included reviewing supporting documentation, inspecting facilities, and giving consent for material expenses or starting new projects related to environmental projects. *Id.* At 9-10. Plaintiffs argue that this demonstrates that Allied, which became Honeywell, assumed rights and duties regarding the remediation and, therefore, can be held liable for any negligence related to those duties. *Id.* At 10.

Finally, Plaintiffs contend that the direct-action rule does not preclude their claims. *Id.* Plaintiffs assert that they are not suing Honeywell in its capacity of indemnitor of Amphenol, but because of its status as Bendix's corporate successor and its own breach of its duty to exercise reasonable care in discharging duties related to the remediation of the Former Bendix Site. *Id.* At 11.

In reply, Honeywell argues that Plaintiffs cannot meet the pleading standard by merely stating that Honeywell is a successor and incorporating documents. According to Honeywell, Plaintiffs' statement that Honeywell is a successor to Bendix is a legal conclusion. (Filing No. 174 at 1.) Additionally, Honeywell contends that Plaintiffs do not meet their pleading burden by solely relying on the Court to interpret the "contracts, merger agreements, and EPA Orders" as factual allegations of Honeywell's status as a successor. *Id.* At 1-2.

Next, Honeywell asserts that the incorporated documents make it clear that Honeywell is not the successor of the environmental liabilities from the Former Bendix Site. Honeywell contends that Plaintiffs' response demonstrates that they have no objection to the consideration of these documents, but that their interpretation is misguided. *Id.* At 3. When looking at the incorporated documents, Honeywell's position is that Bendix's liabilities were clearly transferred to Amphenol in December 1986 and did not remain with Allied. *Id.* At 3-9.

Finally, Honeywell argues that Plaintiffs' claim that it can pursue claims based on Honeywell's own negligence fails because Plaintiffs have included no supporting allegations in their Amended Complaint.  *Id.* At 12.  Honeywell contends that Plaintiffs made these claims for the first time in their response brief.  *Id.*  According to Plaintiffs, these arguments, and the attached documents, are not properly included in Plaintiffs' previous factual claims. Additionally, Plaintiffs contend that these additional allegations, even if properly pleaded, show neither Honeywell's liability nor provide Plaintiffs with standing to sue based on a contractual agreement to indemnify Amphenol. *Id.* At 13.

The Court finds that Plaintiffs have sufficiently stated a factual claim against Honeywell so as to survive dismissal.  Although Honeywell repeats several times that Plaintiffs only included a single, conclusory sentence that it is a "successor to the environmental liabilities of Bendix," the Amended Complaint alleges more than that.  From the outset, the Plaintiffs make clear that the use of the word "Defendants" in the Amended Complaint includes all the named defendants, as well as their "affiliates, predecessors, and agents." (Filing No. 143 at 1.) And Plaintiffs also specifically allege the following against Honeywell:

> Further, through investigation ordered by the EPA, it was discovered, though not revealed to Plaintiffs, the Classes or the community, that VOC contaminants were being discharged directly into the sewer line during operations. ***The decision by the Defendants Amphenol, Honeywell, and their predecessors, created the ultimate means of contaminating the homes in Franklin for the next half century.***

*Id.* At ¶ 63 (emphasis added).  This is a specific, factual allegation against Honeywell and, when combined with the remaining allegations, meets the pleading requirements of Federal Rule of Civil Procedure 8.

Additionally, as the Court reads the Plaintiffs' Amended Complaint, it does not interpret the corporate transaction documents as insulating Honeywell from the current lawsuit. Under

Indiana law, "[a] successor, with reference to corporations, . . . generally means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of the first corporation." *Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385, 386-87 (Ind. Ct. App.).  There is no question that Honeywell, when it was Allied, was a successor to the Bendix corporation when the two companies merged in 1985.  But the Amended Complaint is not limited solely to Bendix's prior actions nor attempting to only hold Honeywell liable for its status as a corporate successor.

As Plaintiffs have pleaded, the factual allegations in the Amended Complaint include potential misconduct over Honeywell's—previously Allied's—actions and decisions after its merger with Bendix. These allegations are not related to successor liability but are specific allegations of tortious acts or omissions Allied made.  Furthermore, though Honeywell argues that Amphenol is the sole successor of Bendix's liabilities because of the corporate transactions, Plaintiffs, who are third parties, are not restricted from pursuing claims by either the 1986 Subscription Agreement or the 1987 Subscription Agreement.  The Plaintiffs can still assert tort claims against Honeywell both for any harm they experienced while Honeywell was a successor of Bendix, as well as for any direct acts or omissions of Honeywell's that may have caused harm.

For the purposes of the tort claims in this case, both Honeywell and Amphenol can be successors.[1] This is especially true as the Plaintiffs' Amended Complaint alleges tort claims that were continuous, occurring over a period of years.  Which successor is responsible for what harm—if any—or  in what proportion will be decided by the finder of fact.  It is possible that Honeywell may not be responsible for any of Plaintiffs' alleged harm based on its status as a

---

[1] For the purposes of addressing Honeywell's argument that Plaintiffs wrongly alleged in their Amended Complaint that both Honeywell and Amphenol were corporate successors of Bendix, the Court would also note that Federal Rule of Civil Procedure 8(e)(2) allows parties to plead alternative and inconsistent theories of liability. *See Holman v. Indiana*, 211 F.3d 399, 409 (7th Cir. 2000).

successor, but the current Motion is not the correct avenue for making that determination. Honeywell's Motion to Dismiss is **denied.**

## IV.    **CONCLUSION**

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the reasons stated above, Honeywell's Motion to Dismiss (Filing No. 159) is **DENIED**.

Plaintiffs' Motion for Leave to Supplement Plaintiffs' Response in Opposition to Honeywell's Motion to Dismiss (Filing No. 177) is **DENIED,** and Honeywell's Motion for Extension of Time to Respond to Plaintiffs' Motion, (Filing No. 182) is **GRANTED**.

**SO ORDERED**.

Date:    6/29/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jacob R. Cox
HOVDE DASSOW & DEETS LLC
jcox@hovdelaw.com

Robert Thomas Dassow
HOVDE DASSOW & DEETS LLC
rdassow@hovdelaw.com

Delmar R. Ehrich
FAEGRE DRINKER BIDDLE & REATH
LLP
delmar.ehrich@faegredrinker.com

Matthew Richard Elliott
FAEGRE DRINKER BIDDLE & REATH
LLP (Indianapolis)
matthew.elliott@Faegredrinker.com

Jonathan P. Emenhiser
PLEWS SHADLEY RACHER & BRAUN
LLP
jemenhiser@psrb.com

Christopher L. Gadoury
THE LANIER LAW FIRM PC
chris.gadoury@lanierlawfirm.com

13

Henry M. Kelln
FAEGRE DRINKER BIDDLE & REATH
LLP (Indianapolis)
h.max.kelln@faegrebd.com

Donald J. Kelly
WYATT TARRANT & COMBS
dkelly@wyattfirm.com

Kip S.M. McDonald
FAEGRE DRINKER BIDDLE & REATH
LLP (Indianapolis)
Kip.McDonald@Faegredrinker.com

Emanuel McMiller
FAEGRE BAKER DANIELS LLP
(Indianapolis)
manny.mcmiller@faegredrinker.com

Jonathan Barry Nace
NIDEL & NACE PLLC
jon@nidellaw.com

Christopher T. Nidel
NIDEL & NACE PLLC
chris@nidellaw.com

Amy E. Romig
PLEWS SHADLEY RACHER & BRAUN
LLP
aromig@psrb.com

Lisa K. Rushton
WOMBLE BOND DICKINSON (US) LLP
lisa.rushton@wbd-us.com

Matthew F. Tilley
WOMBLE BOND DICKINSON (US) LLP
matthew.tilley@wbd-us.com

Andrea Kochert Townsend
PLEWS SHADLEY RACHER & BRAUN
LLP
atownsend@psrb.com

Allison Lauren Upchurch
LEWIS & KAPPES PC
aupchurch@lewis-kappes.com

Richard S. VanRheenen
LEWIS & KAPPES PC
rvanrheenen@lewis-kappes.com

Jordan M. White
WYATT TARRANT & COMBS, LLP
(Louisville)
jwhite@wyattfirm.com

Paul A. Wolfla
FAEGRE DRINKER BIDDLE & REATH
LLP (Indianapolis)
paul.wolfla@faegredrinker.com

James E. Zoccola
LEWIS & KAPPES PC
jzoccola@lewis-kappes.com

Justin M. Gifford
BECK ROCKER & HABIG, P.C.
jgifford@beckrocker.com

Timothy Wayne Cochren
BECK ROCKER & HABIT, LLC
tcochren@beckrocker.com

Dustin Daniel Huddleston
HUDDLESTON & HUDDLESTON
dustin@huddlestonlaw.com